SUCCESSION OF RODRÍGUEZ, PLAINTIFF AND APPELLANT, *v.* PÉREZ, DEFENDANT AND APPELLEE.

APPEAL from the District Court of San Juan, Section 1, in an Action of Ejectment and for Damages.

No. 1478.—Decided March 29, 1917.

EJECTMENT—HEIR—EVIDENCE.—A plaintiff who sues in ejectment as heir may prove such status by oral testimony.

ID.—PRIMA FACIE TITLE—IDENTITY OF PROPERTY—SURVEY—EVIDENCE.—In an action of ejectment to recover a rural property it is sufficient that the evidence establish a *prima facie* title in favor of the plaintiff and that the property, as described in the complaint, be identified by witnesses, so that the marshal, who is a ministerial rather than a judicial officer, may have no difficulty in putting the plaintiff in possession. After examining the evidence in this case, it was held that although the proof of ownership might have been more conclusive and that the identity of the property might have been more clearly established by means of a survey, the evidence on these points was sufficient.

The facts are stated in the opinion.

*Mr. Henry G. Molina* for the appellant.

*Mr. Eugenio Benítez Castaño* for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Suit to recover a parcel of land valued at $300, more or less, and described in the complaint as follows:

"RURAL, situate in the *barrio* of Barraza, Carolina, containing 10 *cuerdas,* bounded on the north by Marcelino Pérez, on the south by Tomás Rodríguez, on the east by Anastasio Colón, and on the west by José Pastrana."

In the Municipal Court of Carolina, where, in so far as the record discloses, plaintiffs introduced only one witness and tendered but one document, a will, objected to by defendant as "of no value whatever," and defendant declined to offer any evidence, the municipal judge dismissed the complaint with costs to plaintiffs.

Defendant did not appear at the trial *de novo* in the district court, and the district judge, after hearing the evidence for plaintiffs, dismissed the action for failure of proof either as to ownership or as to the identity of the property.

We are unable to agree with the trial judge on either ground.

The testimony in the district court is substantially as follows:

ANASTASIO DELGADO testified that he lived in the ward of Carruso of Carolina, the place of his birth, for the past forty-three years; that he knew Juan de la Cruz Rodríguez Hernández, who died about twenty years ago; before his death Rodríguez possessed a property of 16 *cuerdas* in the ward of Barraza of Carolina as the owner thereof by inheritance from his father; said lands are bounded on the east by Anastasio Colón, on the south by Tomás Rodríguez, on the west by José Pastrana and on the north by Simón Maeso, which 16 *cuerdas* were in the possession of Rodríguez for 8 or 10 years prior to his death. Juan de la Cruz Rodríguez left seven children named Sandalio, Juan, Anastasia, known as Agueda, Carlos, Julián, Andrés and Jacoba, the latter left four children named Leocadia, Celestina, Isabelo and Filomeno Carrasquillo whose father is Telesforo Carrasquillo;

that Jacoba had two other children, María Filomena and Inocencia, that died in infancy. Juan de la Cruz Rodríguez did not leave a will. That Marcelino Pérez is in possession of these 16 *cuerdas* but they were not sold to him either by Juan de la Cruz Rodríguez or his succession; that about 8 or 10 years back he entered into possession of six *cuerdas* which were sold to him by the succession of Juan de la Cruz Rodríguez, leaving 10 *cuerdas* which are bounded on the east by Anastasio Colón, on the south by Tomás Rodríguez, on the west by José Pastrana and on the north by Marcelino Pérez; that is, by the six *cuerdas* sold. When the succession sold the six *cuerdas* an uncle and aunt, Felipe and Petrona, remained in possession of the 10 *cuerdas* remaining, and continued living there until their death, about four or six years ago. Upon being questioned by the court whether any person who went to the property without knowing it could state which were the ten *cuerdas* simply by its boundaries, he answered that he could. Questioned again if any person other than the witness should be told what were the boundaries and that the lands were in the ward of Barraza whether he could tell which are those ten *cuerdas,* or would it be necessary for him to make some measurement, the witness said that with his eye alone he could identify the ten *cuerdas* by means of its points.

JULIÁN RODRÍGUEZ testified that he is one of the plaintiffs in this suit, that his father was Juan de la Cruz Rodríguez and died about 15 years ago. That when he died his father had a property in the ward of Barraza of 16 *cuerdas* and he was in possession of the same when he died; a brother and a sister were left in possession and the brother, Felipe, worked the same by halves (*a medias*); that the 16 *cuerdas* belonged to Juan de la Cruz Rodríguez which he acquired by inheritance from his father, Javier Rodríguez, who died about twenty years before his father; he knows that since the death of Javier his father was in possession of the sixteen *cuerdas;* that their boundaries are, on the east Anastasio Colón, on the south

Tomás Rodríguez, on the west José Pastrana and on the north Simón Maeso; that Marcelino Pérez to whom were sold the six *cuerdas* bounding with Simón Maeso, is now in possession of the sixteen *cuerdas;* that the 10 *cuerdas* that were left of the 16 are bounded on the north by the six of Marcelino Pérez, and on the other sides by the same boundaries of the 16, and these were delivered to him by a yard measure made of cord. The six *cuerdas* were marked with stakes, as is done in the country; I have seen the lands in these days and the stakes are there; I could go there and state that these are the 6 *cuerdas* and those are the 10 *cuerdas;* that the witness was present when the sale of the 6 *cuerdas* was made to Marcelino Pérez; that the witness could go to the land and say, these are the six *cuerdas* and those are the ten *cuerdas;* that they never have sold those 10 *cuerdas* to Marcelino Pérez or to any other person; that he knows the 10 *cuerdas* are in the ward of Barraza, being able to go there and distinguish merely by sight the 10 *cuerdas* from the 6; that Marcelino Pérez had the six *cuerdas* fenced but took down the wire about a year or two ago. Did any trace of the fence remain there? Yes, sir. What trace remained? The signs of the holes and of the stakes. How long is it since that fence was removed? It is about a year or two since they removed the fence. How long ago is it since you sold those six *cuerdas* to Marcelino Pérez? It is about nine years, more or less. That it is about 9 years since they sold the six *cuerdas* to Marcelino Pérez; that after that sale Marcelino entered into possession of the six *cuerdas* and his (the witness's) aunt and uncle remained in possession of the remaining ten *cuerdas,* and after Felipe died eight years ago Marcelino took possession of the ten *cuerdas* and removed the wire about a year ago.

RAMÓN RODRÍGUEZ HERNÁNDEZ testified that he lives in the ward of Carruso where he has lived since his birth and that he is fifty or fifty-five years of age; that Juan de la Cruz Rodríguez died, it seems to the witness, before the cyclone, and when he died he possessed a property of sixteen *cuerdas* in the ward

of Barraza bounded then on the east by Anastasio Colón, on the west by José Pastrana, on the south by Tomás Rodríguez and on the north by Simón Maeso; that after the death of Juan de la Cruz Rodríguez the six *cuerdas* that were on the north side were sold; that the 10 *cuerdas* remaining have the same boundaries with the exception of that on the north which is now the six *cuerdas* of Marcelino Pérez; that Juan de la Cruz Rodríguez possessed the sixteen *cuerdas* about ten or twelve years before his death and had acquired these lands from his father Javier Rodríguez; that Marcelino Pérez is in possession of these 10 *cuerdas* today; that he knows the 10 *cuerdas* which are claimed which are in the ward of Barraza.

TELESFORO CARRASQUILLO testified that he lives in Carruso and is 45 years of age, having lived always in that ward; that his wife was a daughter of Juan de la Cruz Rodríguez; that he knew Juan de la Cruz Rodríguez who possessed when he died a property of 16 *cuerdas* in the ward of Barraza; he knows there were 16 *cuerdas* because he went with him when he went to pay the taxes; that after Juan de la Cruz died his children paid the taxes; that today Marcelino Pérez is in possession of the 16 *cuerdas;* that he sold six *cuerdas* of them about eight years ago; the six *cuerdas* were delivered by means of a yard measure made of cord; the points were fixed between the six and ten *cuerdas* with points of *jobo* stakes; those points were there until a short while ago; he does not know whether they have been removed, because he (Pérez) removed the wire that was there; it is about two or three years ago that he removed the wire; that they have not sold the balance of ten *cuerdas* which is what is now being claimed by them; that this land was acquired by inheritance from Juan de la Cruz Rodríguez; that the latter was in possession there since he was young, about twenty years, more or less; after Juan de la Cruz died two brothers remained there; that when Juan de la Cruz died he said to the witness to take care of his two brothers who were very old, and not

to remove them from there until their death; that they all sold the six *cuerdas* to Marcelino Pérez and they made him a document for the six *cuerdas;* that the document was signed by Sandalio Rodríguez, Carlos Rodríguez, Juan Rodríguez, Julián Rodríguez and Anastasia Rodríguez and the witness for his minor children; that the brothers of Juan de la Cruz that remained on the property did not sign the document with the others, and upon selling the 6 *cuerdas* those uncles remained on the 10 *cuerdas.*

Certificates of birth and of baptism of plaintiffs, and of the death of Juan de la Cruz Rodríguez y Hernández showing that he died in the *barrio* of Carruso, municipal district of Trujillo Bajo, on April 11, 1898, being the surviving spouse of Clemencia Rodríguez and leaving as the issue of said marriage seven children named Sandalio, Juan, Carlos, Agueda, Julián, Andrés and Jacoba Rodríguez y Rodríguez, also death certificates of Jacoba Rodríguez y Rodríguez and of her daughters Inocencia and María Filomena Carrasquillo y Rodríguez were likewise admitted.

Plaintiffs claiming as heirs in a reivindicatory action may prove status by oral testimony. *Soriano* v. *Rexach,* 23 P. R. R. 531, *Morales* v. *Landrau,* 15 P. R. R. 763.

The facts as outlined in *Díaz* v. *People,* 17 P. R. R. 55, *Coira* v. *Ortiz,* 18 P. R. R. 211, *Siragusa* v. *People,* 18 P. R. R. 579, and *Hill* v. *Succession of Rosso,* 23 P. R. R. 191, suffice without comment to distinguish those cases from the one at bar. In *Caneja* v. *Rosales & Co.,* 19 P. R. R. 256, the property sought to be recovered was described in the complaint thus: 6.01 *cuerdas* bounded on the east by the Carolina road, on the west by the old plantation Providencia, now the property of Rosales & Co., on the north by lands formerly known as Los Frailes, now belonging to Rosales & Co., and on the south by other lands property of the plaintiffs. This court, after an exhaustive analysis of the facts as shown at the trial, held that the land claimed by the plaintiff was sufficiently

described in the complaint but that the evidence introduced to prove the truth of plaintiff's allegation, which had been denied by the defendants, was so confusing and incomplete that it could not be regarded as sustaining the complaint in this regard and, therefore, constituted no proper basis for a judgment in accordance with such description.

While it is true that in the instant case the proof of ownership might have been more conclusive and that the identity of the property in controversy might have been more clearly established by means of a survey, yet it can hardly be said that the *evidence* does not show a *prima facie* title in plaintiffs nor that it falls so far short of identification as to render delivery of possession impossible. Assuming, as we must in the absence of any finding to the contrary, that the witnesses for plaintiffs speak the truth, we think it reasonably clear that the marshal of the court, although he is, of course, a ministerial rather than a judicial officer, should find no difficulty in putting plaintiffs in possession of the ten acres object of this suit, the boundaries of which as given by the witnesses on the stand are identical with the description contained in the complaint, with the additional circumstance that the northern boundary is a line formerly occupied by a wire fence which separated the six acres sold to defendant from the balance of ten acres belonging to plaintiffs.

The judgment appealed from must be reversed and, in lieu thereof, plaintiffs should be adjudged and decreed to be the owners of the property described in the complaint and as such entitled to immediate possession thereof, with provision for the issuance of a writ of possession, specifying as the northern boundary of the property recovered the line above referred to formerly occupied by a wire fence.

*Reversed and substituted.*

Chief Justice Hernández and Justices Wolf, del Toro and Aldrey concurred.